UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------

VOTERS FOR ANIMAL RIGHTS,

                         Plaintiff,

        v.

D'ARTAGNAN, INC. and D'ARTAGNAN LLC,

                       Defendants.

---------------------------------------------------------------

**MEMORANDUM & ORDER**
19-CV-6158 (MKB)

MARGO K. BRODIE, United States District Judge:

        Plaintiff Voters for Animal Rights commenced the above-captioned action on October

31, 2019, against Defendants D'Artagnan, Inc. and D'Artagnan, LLC, alleging that Defendants

misled consumers in violation of sections 349 and 350 of the New York General Business Law

("GBL") by deceptively marketing their foie gras products as originating from humanely treated

ducks, which injured Plaintiff by (1) setting back its organizational mission to reduce demand for

foie gras and obtain the passage of laws banning its sale, and (2) requiring it to spend money and

resources to counter Defendants' misleading messages.  (Compl., Docket Entry No. 1.)

Defendants moved to dismiss the Complaint, arguing that Plaintiff had not alleged that it had

suffered an injury cognizable under sections 349 and 350.[1]  The Court referred the motion to

Magistrate Judge Roanne L. Mann for a report and recommendation.  (*See* Order dated May 14,

2020.)  By report and recommendation dated July 15, 2020, Judge Mann recommended that the

Court dismiss the Complaint (the "R&R").  (R&R, Docket Entry No. 24.)  Judge Mann

---

      [1] (Defs.' Letter Mot. to Dismiss ("Defs.' Mem."), Docket Entry No. 21; Pl.'s Mem. in Opp'n to Defs.' Mot. ("Pl.'s Mem."), Docket Entry No. 20; Defs.' Reply in Supp. of Defs.' Mem. ("Defs.' Mot. to Dismiss Reply"), Docket Entry No. 22.)

determined that Plaintiff has not established that it has suffered an injury because the harm Plaintiff described was derivative of injuries suffered by consumers and therefore not cognizable under sections 349 and 350. (*Id.* at 1, 17–18.) On July 29, 2020, Plaintiff filed objections to the R&R, and on August 12, 2020, Defendants responded. (Pl.'s Obj. to R&R ("Pl.'s Obj."), Docket Entry No. 25; Defs.' Reply in Opp'n to Pl.'s Obj. ("Defs.' Reply"), Docket Entry No. 26.)

For the reasons explained below, the Court adopts the R&R and dismisses the Complaint.

## I.   Background

The Court assumes the truth of the factual allegations in the Complaint for the purposes of deciding Defendants' motion and also assumes the parties' familiarity with the facts set forth in the R&R. The Court provides only a summary of the relevant facts.

### a.   The Complaint

Plaintiff is "a nonprofit organization dedicated to advancing the interests of citizens who support animal protection." (Compl. ¶ 6.) Plaintiff alleges that Defendants sell foie gras produced by force-feeding ducks in conditions that "[n]umerous veterinarians, scientists, and government-appointed research bodies" consider objectively inhumane. (*Id.* ¶¶ 2–3, 23; *see also id.* ¶¶ 23–44, 76, 79, 97.) In addition, Plaintiff alleges that Defendants mislead consumers by advertising that they raise ducks in humane conditions, when in fact Defendants' "production practices [are] inconsistent with how a reasonable consumer would understand" the statements in their advertising. (*Id.* ¶ 25; *see also id.* ¶¶ 4, 8–22, 66–68.) Plaintiff contends that Defendants' misleading advertising has been effective in changing consumer attitudes towards a ban on foie gras production, "has directly decreased the effectiveness of [Plaintiff's] efforts to reduce foie gras consumption," and has required Plaintiff to expend its resources to counter Defendants' misrepresentations. (*Id.* ¶¶ 81–84.) In support, Plaintiff alleges that studies show that consumers

"are willing to pay more for products that they believe come from humanely treated animals"

and "that these consumers' concerns apply specifically to ducks raised for foie gras." (*Id.* ¶¶ 57–64.)

Plaintiff claims that Defendants' conduct violates sections 349 and 350 of the GBL,[2] (*id.* ¶ 5), and seeks declaratory and injunctive relief, (*id.* ¶ 6).

### b. The pre-motion letters and conference

In December of 2019, Defendants moved for a pre-motion conference in anticipation of their motion to dismiss. (Letter dated Dec. 26, 2019, Docket Entry No. 16.) Defendants argued that Plaintiff had not suffered any injury that would allow it to sue under sections 349 or 350 of the GBL because it was neither a consumer nor a competitor and was asserting an injury that was "merely derivative of an injury to consumers." (*Id.* at 2.) Defendants also argued that if the Court allowed the case to proceed, "an[y] advocacy group that opposes a product or service" would be able to "use the judicial system to drag a business into court whenever the group takes issue with an aspect of its advertising of the very product or service that the advocacy group would never buy," (*id.* at 1–2), inviting "a 'tidal wave of litigation against businesses that was not intended by the [l]egislature.'" (*Id.* at 2 (quoting *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 3 N.Y.3d 200, 207 (2004)) (citing *City of New York v. Smokes-Spirits.Com, Inc.*, 12 N.Y.3d 616, 621–623 (2009)).)

---

[2] Section 349 of the GBL prohibits "[d]eceptive acts or practices in the conduct of any business, trade[,] or commerce or in the furnishing of any service in this state," and contains a private right of action for "any person who has been injured by reason of any violation of this section." GBL § 349(a), (h). Section 350 of the GBL prohibits "[f]alse advertising in the conduct of any business, trade[,] or commerce or in the furnishing of any service in this state." *Id.* § 350. Section 350-e(3) of the GBL provides for a private right of action for "[a]ny person who has been injured by reason of any violation of [section 350]." *Id.* § 350-e(3).

In response, Plaintiff argued that New York already "recognizes standing for non-profit organizations in consumer protection cases" and that it was injured when consumers were misled by Defendants' statements.  (Letter dated Jan. 6, 2019, at 2–3, Docket Entry No. 17.)  Plaintiff also argued that it could bring claims under sections 349 and 350 "[a]s a bona fide non-profit organization" on behalf of the class of consumers who supported the humane treatment of animals, and further argued that it incurred an actionable, nonderivative injury pursuant to section 349 when customers were unfairly misled about foie gras.  (*Id.* at 3 (citing *N. State Autobahn, Inc. v. Progressive Ins. Grp. Co.*, 953 N.Y.S.2d 96, 105 (App. Div. 2012)).)

The Court held a pre-motion conference on January 29, 2020.  (Tr. of Pre-Mot. Conf. dated Jan. 29, 2020 ("PMC Tr.") 1, Docket Entry No. 21-1.)  The Court clarified that the parties disputed one element of Plaintiff's section 349 and 350 claims, namely, whether Defendants' alleged misrepresentations had caused Plaintiff to suffer an injury cognizable under the statute.  (*Id.* at 4, 6.)  Defendants argued that Plaintiff "did not suffer an injury that the New York State Legislature recognizes as redressable and covered by [s]ection 349."  (*Id.* at 7.)  Relying on *Blue Cross* and *Smokes-Spirits*, Defendants argued that Plaintiff's injury was not redressable because it was derivative of any injury to consumers.  (*Id.* at 7–8.)  In response, Plaintiff argued that Defendants' "falsely advertising the great benefits of [their] product" directly injured Plaintiff because Plaintiff's purpose as a nonprofit organization was to prevent people from buying foie gras, and Defendants' effective messaging "defeat[ed]" Plaintiff's advocacy efforts and required them to use additional resources to counter Defendants' advertising.  (*Id.* at 8–10.)  The Court noted Defendants' reliance on *Blue Cross* and *Smokes-Spirits* and the distinction that Plaintiff was attempting to make but did "not opin[e] as to whether Plaintiff [was] right or not" because "[the Court had not] sufficiently delved into the law to know that."  (*Id.* at 12.)

4

### c. Defendants' motion to dismiss

Defendants moved to dismiss on the ground that Plaintiff had not suffered a cognizable injury under sections 349 and 350 and had therefore failed to state a claim.  (Defs.' Mem.)  In support, Defendants argued that Plaintiff was neither a consumer of Defendants' products nor a direct competitor, therefore its alleged injury was derivative of consumers' exposure to the alleged misleading statements and not actionable under New York law, (*id.* at 1, 4), because Plaintiff was "injured only to the extent that consumers [were] misled by [Defendants'] advertising," (*id.* at 7).  Defendants argued that "[i]f the result were otherwise, then any advocacy group could claim an injury against any business it chose to spend its resources opposing."  (*Id.* at 2; *see* Defs.' Mot. to Dismiss Reply 5.)

Plaintiff argued in opposition that it was injured when Defendants undermined its advocacy and therefore, "its injuries were not 'solely . . . a result of injuries sustained by another party.'"  (Pl.'s Mem. 4 (quoting *M.V.B. Collision, Inc. v. Allstate Ins. Co.*, 728 F. Supp. 2d 205, 218 (E.D.N.Y. 2010)).)  It argued that Defendants' "misleading representations . . . undermine [Plaintiff's] efforts" because "[r]esearch commissioned by the foie gras industry specifically shows that consumers who support a ban on foie gras production may *change* their views, to oppose such legislation, once they are exposed to misleading pro-industry messaging."  (*Id.* at 3.)  Therefore, Defendants' actions undermined Plaintiff's advocacy and required it to spend more money and resources "to counteract [Defendants'] deceptive marketing."  (*Id.*)  Plaintiff also argued that individuals other than consumers or direct competitors could have standing under section 349 and that it suffered a cognizable injury under section 349 because, unlike the plaintiffs in *Blue Cross* and *Smokes-Spirits*, it was injured when the instant consumers were misled.  (*Id.* at 4.)  In addition, Plaintiff argued that other states that have allowed advocacy

organizations to bring lawsuits in similar circumstances had not seen a "tidal wave" of litigation, and further, Plaintiff's circumstances were "relatively unique" because it had concrete evidence that Defendants' advertisements made its advocacy less effective.  (*Id.* at 5 (quoting *M.V.B. Collision, Inc.*, 728 F. Supp. 2d at 218).)

### d.   The R&R

Judge Mann recommended that the Court grant Defendants' motion to dismiss because Plaintiff had not stated a cognizable injury under sections 349 and 350.  (R&R 1, 17–18.)

The parties agreed that the only disputed issue was whether Plaintiff had suffered an injury as a result of Defendants' allegedly deceptive act or practice.[3]  Judge Mann noted that the plain text of sections 349 and 350 does not explain what constitutes an actionable injury or what persons are covered by either statute, and therefore she reviewed the legislative history.  (*Id.* at 6–7.)  After a review of the legislative history, Judge Mann concluded that "[s]tatements made in support of and against the passage of the proposed amendments show that legislators intended for individual consumers to use the private right of action on their own behalf" and that the legislators who enacted sections 349 and 350 had not contemplated the type of action Plaintiff sought to bring.  (*Id.* at 8.)  In addition, Judge Mann determined that the legislative history "demonstrates a concerted effort to limit the scope of the provisions" to prevent "a deluge of lawsuits."  (*Id.* at 9–10.)  Judge Mann concluded that "courts should be reluctant to embrace a broad interpretation of what constitutes a cognizable 'injury' under sections 349 and 350 of the GBL."  (*Id.* at 10.)

---

[3]  To state a claim under either section 349 or 350, Plaintiff had to allege that Defendants "engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice."  (R&R 5 (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)).)

Judge Mann also reviewed the leading New York Court of Appeals cases to address the injury requirement of section 349,[4] *Blue Cross* and *Smokes-Spirits*, both of which Defendants relied upon to argue that Plaintiff failed to assert an injury. (*Id.* at 10–12.) Judge Mann found that "the rationale of each of [these] decisions strongly suggests that [P]laintiff has failed to assert an injury that is sufficiently direct to satisfy sections 349 and 350 of the GBL." (*Id.* at 12.) In determining "whether [P]laintiff's injuries ([its] purported expenditures to counteract [Defendants'] misleading statements) arise solely as a result of injuries sustained by consumers," that is, "foie gras customers in New York State," Judge Mann relied on the New York Court of Appeals' "extensive[] discuss[ion] [of] section 349(h)'s prohibition against recovery for a plaintiff's 'derivative injuries.'" (*Id.*) Judge Mann noted that the New York Court of Appeals explained that "[a]n injury is indirect or derivative when the loss arises solely as a result of injuries sustained by another party." (*Id.* (alteration in original) (citing *Blue Cross*, 3 N.Y.3d at 207).) She concluded that Plaintiff's injuries were derivative because, as Defendants argued, "if [Defendants] were not reaching any consumers with [their] advertising, then [Plaintiff] would not feel compelled to 'expend resources' attempting to dissuade those consumers from

---

[4] Although *Blue Cross* and *Smokes-Spirits* only discuss section 349, because these claims have the same elements, the Court engages in the same analysis when evaluating Plaintiff's section 350 claims. *See Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020) ("The standard for recovery under [GBL] § 350, while specific to false advertising, is otherwise identical to [s]ection 349." (quoting *Denenberg v. Rosen*, 897 N.Y.S.2d 391, 395 (App. Div. 2010))); *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 186 (E.D.N.Y. 2018) ("With an exception not relevant here, '[t]he standard for recovery under . . . [section] 350, while specific to false advertising, is otherwise identical to section 349.'" (footnote omitted) (alterations in original) (quoting *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002))); *Plavin v. Grp. Health Inc.*, 35 N.Y.3d 1, 10 (2020) ("We have explained that, to state a claim under sections 349 or 350, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) [the] plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" (quoting *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012))).

purchasing foie gras," making Plaintiff's injury derivative of the injury to consumers.  (*Id.* at 13 (quoting Defs.' Mem. 6).)  Judge Mann rejected as unavailing the distinction that Plaintiff attempted to make between "'injuries resulting from consumer *deception*' and those 'resulting solely from consumer *injury*'" by attempting to distinguish *Blue Cross* and *Smokes-Spirits* as involving injuries dependent on consumer injuries and by arguing that the injuries in this case are independent of any consumer injuries.  (*Id.* at 13–14 (quoting Pl.'s Mem. 4–5).)

In addressing Plaintiff's argument that this case is similar to *Casper Sleep*,[5] Judge Mann disagreed, because in *Casper Sleep*, the district court stated that that the plaintiff Casper Sleep was injured by misleading statements that "dissuaded [consumers] from buying Casper mattresses."  (*Id.* at 14.)  Judge Mann reasoned that "the injury alleged in the case at bar — expenditures that [Plaintiff] opted to make — bears no resemblance to the 'diversion of trade' injury in *Casper Sleep*, where the deception of consumers directly caused the plaintiff to suffer a loss, whatever the plaintiff's response to that deception."  (*Id.*)  To decide otherwise would suggest that "any organization that opts to spend its resources persuading consumers to boycott a product or service" had incurred an injury under sections 349 and 350 of the GBL, and would invite "a deluge of analogous lawsuits."  (*Id.* at 14–15.)

Judge Mann found that none of the other cases Plaintiff cited were persuasive because they concerned injuries to competitors, representational standing (and Plaintiff did not sue on behalf of its members), or different laws in a different jurisdiction.  (*Id.* at 16.)  Judge Mann

---

[5]  In *Casper Sleep*, the court held that the plaintiff was harmed under section 349 the instant a consumer was dissuaded from buying one of the plaintiff's mattresses, even if the consumer did not ultimately purchase a mattress from a competitor.  *Casper Sleep, Inc. v. Mitcham*, No. 16-CV-3224, 2016 WL 7188788, *2 (S.D.N.Y. Nov. 14, 2016) ("It is the withholding of trade, rather than any consumer's subsequent purchase of a competitor's product, that produces [the] plaintiff's injury, and thus that injury is direct, rather than derivative of an injury to consumers.").

distinguished a New York Supreme Court case, *In re Opioid Litigation*, in which the Supreme Court of New York, Suffolk County, held that the plaintiffs (counties in the state of New York) could bring a section 349 action against non-competitor pharmaceutical manufacturers who allegedly engaged in "deceptive marketing campaigns [that] created a public health crisis within the plaintiff counties, leading to substantial increases in opioid addiction, abuse, overdose[,] and death among residents." (*Id.* at 17 (quoting *In re Opioid Litig.*, INDEX No. 400000/2017, 2018 N.Y. Misc. LEXIS 2428, at *73 (Sup. Ct. June 18, 2018)).) She noted that the opinion "did not elaborate on its departure from *Blue Cross*" and "involved a host of injuries to the plaintiff counties," and therefore did not provide a basis for concluding that Plaintiff had a cognizable injury in light of decisions counseling otherwise.[6] (*Id.*)

e.   **Plaintiff's objections to the R&R**

In its objections to the R&R, Plaintiff makes several arguments to support its claim that it incurred cognizable injuries from Defendants' actions. (Pl.'s Obj.)

First, Plaintiff contends that its injuries are direct and not derivative. (*Id.* at 4–11.) Plaintiff asserts that Judge Mann erred by focusing exclusively on *Blue Cross* and *Smokes-Spirits*, which involved injuries distinguishable from Plaintiff's injuries and which the Court indicated at the pre-motion conference were distinguishable from the facts of this case.[7] (*Id.* at

---

[6] Although Plaintiff had not sought leave to amend, Judge Mann recommended that leave to amend should not be granted "given the futility of any attempt to plead a cognizable injury." (R&R 17 n.9.)

[7] Contrary to Plaintiff's assertion, (Pl.'s Obj. 4), the Court did not hold at the pre-motion conference that *Blue Cross* and *Smokes-Spirits* were not dispositive. By "not opining as to whether Plaintiff [was] right or not" about the distinction Plaintiff was attempting to make between this case and *Blue Cross* and *Smokes-Spirits* because the Court had not "sufficiently delved into the law," (PMC Tr. 12), the Court was declining to rule in the absence of full briefing rather than stating that those precedents were inadequate.

4.)  Plaintiff argues that the injuries it asserts are direct injuries cognizable under sections 349 and 350 because (1) Plaintiff was directly injured when Defendants' misleading advertisements decreased support for its mission (unlike *Blue Cross* and *Smokes-Spirits*, where several steps intervened between the defendant's acts and the plaintiff's alleged injury), (2) section 349 had been applied outside the context of direct competitors, (3) Defendants' misleading advertisements directly injured Plaintiff by forcing it to expend additional resources to counteract their harmful effects, as in *In re Opioid Litigation*, which, Plaintiff argues, contrary to the R&R, did address the derivative injury rule, and (4) Plaintiff's injuries are analogous to those recognized under the consumer protection laws of other states, which were considered in *Blue Cross*, and under Article III precedent on standing.  (*Id.* at 5–10.)  In addition, Plaintiff argues that Judge Mann erred by failing to consider all of Plaintiff's injuries because Plaintiff "suffer[ed] a direct loss of support for its mission as a result of [Defendants'] marketing," which frustrated Plaintiff's institutional "purpose to prohibit the sale and production of foie gras."  (*Id.* at 10–11.)  Instead, Judge Mann only discussed Plaintiff's increased expenditures and misunderstood the nature of nonprofit organizations when she characterized those expenses as voluntary.  (*Id.* at 11 & n.6.)

Second, Plaintiff argues that Judge Mann erred by concluding, without evidence, that a "tidal wave" of litigation would result if the Court recognized direct injuries to public interest organizations under section 349.  (*Id.* at 12.)  In support of this argument, Plaintiff contends that it could "point to consumer research specifically demonstrating that [its] advocacy efforts are undermined by the precise messages that are contained in Defendants' advertisements," which — as the Court recognized at the pre-motion conference — was not necessarily true for other organizations.  (*Id.*)

10

Third, Plaintiff argues that the legislative history of sections 349(h) and 350-e(3) shows that proponents intended to expand individual remedies against deceptive business practices, and that the language was carefully drafted not to limit "the class of plaintiffs who may sue or the type of injury that may be redressed."[8]  (*Id.* at 13–14.)  Finally, Plaintiff asks that it be permitted to amend the Complaint if the Court adopts the R&R.  (*Id.* at 15.)

In response, Defendants argue that Plaintiff's objections repeat its arguments made in opposing the motion to dismiss and that the Court should adopt the R&R in full for the reasons set forth by Judge Mann.  (Defs.' Reply.)  Defendants also argue that the legislative history does not support Plaintiff's argument that it suffered a cognizable injury and that in the forty years since a private right of action was enacted, no attorney has tried to use the statute against an ideological adversary.  (*Id.* at 3.)  Finally, Defendants ask that the Court dismiss the Complaint without leave to amend.  (*Id.* at 5–6.)

## II.  Discussion

### a.  Standards of review

#### i.  Report and recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).  When a party submits a timely objection to a report and recommendation, the district court reviews *de novo* the parts of the report and recommendation to which the party objected.  *Id.*; *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015).  The district court may adopt those portions of the recommended ruling to which no

---

[8]  Judge Mann's recommendation is based on whether Plaintiff asserted a cognizable injury, (R&R 15–16), not on whether Plaintiff is a "person" covered by the text of the statute.

timely objections have been made, provided no clear error is apparent from the face of the record.  *See John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015) (applying clear error when no objections to the magistrate judge's report and recommendation were filed).  The clear error standard also applies when a party makes only conclusory or general objections.  Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the [magistrate judge's] proposed findings and recommendations."); *see also Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under . . . Fed. R. Civ. P. 72(b)." (quoting *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002))); *Benitez v. Parmer*, 654 F. App'x 502, 503–04 (2d Cir. 2016) (holding that "general objection[s] [are] insufficient to obtain *de novo* review by [a] district court").

Whether clear error review or *de novo* review applies when an objecting party reiterates the arguments made to the magistrate judge is unclear.  While the Second Circuit has suggested that clear error review is appropriate if a party's objection to a magistrate judge's report and recommendation repeats arguments already presented to and considered by the magistrate judge, *see Mario*, 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed. R. Civ. P. 72(b) . . . ."), the Second Circuit has more recently stated that it is "skeptical" that the clear error standard would be appropriate when the objection is based on a previously asserted argument, *see Moss v. Colvin*, 845 F.3d 516, 520 n.2 (2d Cir. 2017) ("[W]e are skeptical that clear error review would be appropriate in this instance, where arguably 'the only way for [the plaintiff] to raise . . . arguments [on that point] [was] to reiterate them.'" (third and fourth alterations in original)

(quoting *Watson v. Geithner*, No. 11-CV-9527, 2013 WL 5441748 (S.D.N.Y. Sept. 27, 2013))
(citing 28 U.S.C. § 636(b)(1))); *see also Harewood v. N.Y.C. Dep't of Educ.*, No. 18-CV-5487,
2021 WL 673476, at *6 (S.D.N.Y. Feb. 22, 2021) ("[W]hen the objections simply reiterate
previous arguments or make only conclusory statements, the court should review such portions
of the report only for clear error." (first citing *Dickerson v. Conway*, No. 08-CV-8024, 2013 WL
3199094, at *1 (S.D.N.Y. June 25, 2013); and then citing *Kirk v. Burge*, 646 F. Supp. 2d 534,
538 (S.D.N.Y. 2009))); *Castorina v. Saul*, No. 19-CV-991, 2020 WL 6781078, at *1 (S.D.N.Y.
Nov. 18, 2020) ("While courts in this [d]istrict sometimes state that objections that 'simply
reiterate [the] original arguments' merit only clear error review, this rule lacks support in either
28 U.S.C. § 636(b)(1)(C) or Rule 72(b)(2) of the Federal Rules of Civil Procedure.  The Second
Circuit has expressed similar skepticism." (alteration in original) (citation omitted)).

### ii.    Motion to dismiss

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil
Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the
complaint as true[] and drawing all reasonable inferences in the plaintiff's favor."  *Kim v. Kimm*,
884 F.3d 98, 103 (2d Cir. 2018) (quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d
Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v.
N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)).  A complaint must plead "enough
facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S.
544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the
court to draw the reasonable inference that the defendant is liable for the misconduct alleged."
*Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009)).  Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.

> **b.    Unopposed portions of the R&R**

Defendants do not object to the R&R's findings that Plaintiff has sufficiently alleged misleading, consumer-oriented conduct, satisfying the first two elements of a section 349 or 350 claim.  (*See* Defs.' Reply.)  Nor does either party object to the R&R's conclusion that the statutes are ambiguous and that the legislative history is relevant to their interpretation.[9]  Having reviewed these recommendations for clear error and finding none, the Court adopts these recommendations pursuant to 28 U.S.C. § 636(b)(1).

> **c.    Plaintiff has not alleged a cognizable injury under sections 349 or 350**

Plaintiff's asserted injuries are derivative of injuries to consumers, not direct injuries, and therefore do not support a claim under either section 349 or 350 of the GBL.

"When sitting in diversity jurisdiction and determining New York state law claims, [federal courts] must apply 'the law of New York as interpreted by the New York Court of Appeals.'"  *Deutsche Bank Nat'l Tr. Co. v. Quicken Loans Inc.*, 810 F.3d 861, 865 (2d Cir. 2015) (quoting *Licci ex rel Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 48 (2d Cir. 2013) (per curiam)); *see also Lehman XS Tr., Series 2006-GP2 v. GreenPoint Mortg. Funding, Inc.*, 916 F.3d 116, 124 (2d Cir. 2019) (same); *Goodlett v. Kalishek*, 223 F.3d 32, 36 (2d Cir. 2000) (explaining that this Court's "obligation . . . is to apply New York law as the New York Court of Appeals would apply it").

---

[9]  The Court also notes that while Plaintiff argues that *Blue Cross* and *Smokes-Spirits* are distinguishable, (Pl.'s Obj. 4), it does not dispute how the R&R describes the holdings of those cases or the fact that they provide some guidance as to what constitutes an injury for purposes of assessing claims pursuant to sections 349 and 350.

GBL section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." GBL § 349. GBL section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." GBL § 350. To assert a claim under either section, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) [the] plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (citing *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012)); *see also Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020) (quoting *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)) (stating the elements of a section 349 claim).[10] The New York Court of Appeals has explained that injuries that are too remote or derivative of a consumer's injuries are not cognizable injuries. *Blue Cross*, 3 N.Y.3d at 208 (holding "that a third-party payer has no standing to bring an action under [GBL section] 349 because its claims are too remote" and "that what is required [under section 349] is that the party actually injured be the one to bring suit"); *Smokes-Spirits*, 12 N.Y.3d at 622–23 (holding that the plaintiff could not bring a section 349 claim that was "entirely derivative of injuries that it alleges were suffered by misled consumers" and that an allegation of "but-for cause" was insufficient to state a section 349 claim).

In *Blue Cross*, the court held that an insurer could not sue a tobacco company that

---

[10] Because the parties only dispute whether Plaintiff has pled a cognizable injury, the Court only addresses this issue. (Pl.'s Obj. 1 ("For the reasons set forth below, the Court should not adopt the [R&R's] conclusions and should instead recognize that [Plaintiff] has alleged a cognizable injury under GBL §§ 349 and 350."); Defs.' Reply 2 (focusing solely on whether Plaintiff alleged a cognizable injury and stating that "[i]ndeed, there is only so much that can be written about [Plaintiff's] inability to allege a cognizable injury, and the R&R correctly disposed of each of [Plaintiff's] arguments").)

"misrepresented the dangers of smoking and engaged in a campaign to encourage consumers to smoke" even though the plaintiff insurer was required to bear the increased medical costs that resulted, because the plaintiff insurer's claims were "too remote" and derivative of consumers' injuries. 3 N.Y.3d at 206–08.  The plaintiff argued that "in enacting [section] 349, the [l]egislature intended to . . . permit recovery for derivative injuries," but the Court of Appeals found no legislative history indicating an intent by the legislature to permit the plaintiff's theory of recovery and it "warned against 'the potential for a tidal wave of litigation against businesses that was not intended by the [l]egislature.'"  *Id.* at 206–07 (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995)).  In *Smokes-Spirits*, the Second Circuit certified the question of whether New York could sue tobacco companies under section 349 under the theory that the defendants had misrepresented internet purchases of cigarettes as tax-free and New York consumers had bought them, depriving the state of tax revenue.  *Smokes-Spirits*, 12 N.Y.3d at 618–19.  The Court of Appeals determined that such an injury is not cognizable because the City's claim — like the claim in *Blue Cross* — was indirect even though the City had been financially injured.  *Id.* at 623 ("If a plaintiff could avoid the derivative injury bar by merely alleging that its suit would somehow benefit the public, then the very 'tidal wave of litigation' that we have guarded against since *Oswego* would loom ominously on the horizon.").  The Court of Appeals found that the claim was indirect because the City's injury relied on the harm suffered by the allegedly deceived consumers, stating that "had the allegedly deceived consumers not been improperly induced to purchase defendants' cigarettes then the City would have no claim to lost tax revenue."  *Id.* at 622.

Plaintiff fails to allege a direct injury because the consumers, not Plaintiff, are allegedly being misled and injured by Defendants' representations.  Plaintiff's alleged injury — the

additional expenses it incurs to combat Defendants' harmful advertisement to consumers who would not support[11] foie gras if given accurate information, (Compl. ¶¶ 57–64, 84–86, 90–91) — is too remote and indirect, similar to the alleged harm suffered by the plaintiff City in *Blue Cross*, in which the City alleged that it had been harmed by the additional expenses it incurred treating cigarette smokers who had been misled by the defendant's advertising and the Court of Appeals found that these expenses were not the type of injuries covered by sections 349 and 350. In *Blue Cross*, the Court of Appeals instructed that "[a]n injury is indirect or derivative when the loss arises solely as a result of injuries sustained by another party." *Blue Cross*, 3 N.Y.3d at 207. As in *Blue Cross*, Plaintiff's injury necessarily relies on the injuries sustained by consumers — that is, consumers' deception by Defendants' advertising. Plaintiff's injuries — the loss of consumer support and additional advertising and campaign-related expenses to garner support — only occur if consumers are first misled and deceived by Defendants' conduct. The additional expenses Plaintiff may incur as a consequence of Defendants' advertising messages are expenses incurred by Plaintiff in its effort to cure the harm inflicted on the consumers who were misled about foie gras production by Defendants' actions. Unless and until consumers are misled by Defendants' conduct, there is no injury to Plaintiff. *See Smokes-Spirits*, 12 N.Y.3d at 622 ("[H]ad the allegedly deceived consumers not been improperly induced to purchase [the] defendants' cigarettes then the City would have no claim to lost tax revenue." (citing *Blue Cross*, 3 N.Y.3d at 207)). Thus, Plaintiff cannot suffer an injury independently of the consumers'

---

[11]   The Court uses the word "support" because, as Plaintiff notes, there are many positions between purchasing foie gras and voting to ban its sale. (*See* Pl.'s Obj. 6 ("[Plaintiff] was injured when the ads decreased support for [Plaintiff's] work, even if no consumer ever acted on that misinformation by purchasing [Defendants'] foie gras. Indeed, many individuals exposed to the ads (who have subsequently decreased their support for [Plaintiff's] work) may not be foie gras consumers at all.").)

injury.  Therefore, unlike *Casper Sleep* where the defendant's conduct directly affected the plaintiff by causing business to be diverted from the plaintiff, *see Casper Sleep, Inc. v. Mitcham*, No. 16-CV-3224, 2016 WL 7188788, at *2 (S.D.N.Y. Nov. 17, 2016) ("It is the withholding of trade, rather than any consumer's subsequent purchase of a competitor's product, that produces [the] plaintiff's injury, and thus that injury is direct, rather than derivative of an injury to consumers."), Defendants' conduct has no effect on Plaintiff unless it impacts consumers, making Plaintiff's injury derivative.

The Court is not persuaded by Plaintiff's arguments that certain cases and the legislative history of sections 349 and 350 mandate a different result.

### i.    The cases Plaintiff relies on are distinguishable

None of the cases on which Plaintiff relies support its efforts to distinguish the facts of this case from those deemed derivative in *Blue Cross* and *Smokes-Spirits* because those cases involved direct harms to a business, rather than harms to consumers that subsequently caused a business to incur increased costs.  *See Casper Sleep, Inc.*, 2016 WL 7188788, at *2; *N. State Autobahn, Inc.*, 953 N.Y.S.2d at 102; *M.V.B. Collision, Inc.*, 728 F. Supp. 2d at 219.  In *Casper Sleep*, the district court held that the plaintiff mattress company could state a section 349 claim based on the defendants' allegedly misleading claims that they were providing "independent and unbiased" mattress reviews, when "[i]n fact, [the defendants' reviews were] intended to sell mattresses made by [a defendant's] affiliates."  *Casper Sleep, Inc. v. Mitcham*, 204 F. Supp. 3d 632, 636 (S.D.N.Y. 2016) (first alteration in original).  Even if the consumers never bought from a competitor, the district court found that "the withholding of trade . . . produce[d] [the] plaintiff's injury."  *Casper Sleep, Inc.*, 2016 WL 7188788, at *2.  Unlike Plaintiff in this case, the plaintiff in *Casper Sleep* was directly harmed because the defendants' false claims to be

unbiased reviewers were the direct cause of the plaintiff's loss of revenue.  In this case, the connection between Defendants' actions and Plaintiff's asserted injury is more tenuous. Defendants' actions cause consumers to believe their foie gras was ethically produced and that foie gras in general can be humanely produced.  Plaintiff then combats these beliefs with more costly advocacy.  Unlike in *Casper Sleep*, Defendants' actions do not target Plaintiff directly — Defendants are not misrepresenting Plaintiff's organization in a manner that causes Plaintiff to lose supporters.  Defendants' alleged misrepresentations about foie gras production affect public opinion, which in turn affects how Plaintiff allocates resources to fulfill its organizational mission.

The facts of this case are likewise distinguishable from *North State Autobahn, Inc*.  In *North State Autobahn*, the Appellate Division held that the plaintiff repair shop stated a section 349 claim when it alleged that the defendant insurance companies made misrepresentations that induced customers to take their business elsewhere.  *N. State Autobahn, Inc.*, 953 N.Y.S.2d at 99. The defendants had "engaged in deceptive conduct which misled customers of the plaintiffs and other independent shops into believing that they must have their vehicles repaired at repair shops that were members of the [repair plan]."  *Id.* at 102.  Thus, the plaintiff's injury — diversion of customers — was direct, unlike Plaintiff's injury in this case, which was inflicted by Defendants' misrepresentations to consumers about foie gras generally.  Similarly, in *M.V.B. Collision*, customers were steered away from a plaintiff auto repair shop by the defendant insurance company with specific, targeted misrepresentations about the plaintiff's facility.  *M.V.B. Collision, Inc.*, 728 F. Supp. 2d at 211 (describing alleged misrepresentations that the defendant's agents made to customers, including that the plaintiff "was a 'bad facility that was engaged in price gouging and illegal activities'").  In *North State Autobahn* and *M.V.B.*

19

*Collision*, both involving vehicle repair shops, the plaintiff businesses were directly injured when consumers were steered away because the defendants allegedly made misrepresentations about the plaintiffs' businesses.  Plaintiff's allegations in this case are that Defendants have allegedly made misrepresentations about a topic relevant to Plaintiff's organizational purpose, misrepresentations that could affect consumers who would otherwise support Plaintiff's views on foie gras, and that the assumed change in consumer sentiment — not anything Defendants have said about Plaintiff or its business practices — resulted in injury to Plaintiff.[12]

In summary, the three cases Plaintiff cites are distinct from the facts in this case, in which Plaintiff's harm results from the harm suffered by consumers.  *See Frintzilas v. DirecTV, LLC*, 731 F. App'x 71, 72 (2d Cir. 2018) (finding that the plaintiff landlords could not sue the defendant companies under section 349 for "presenting [tenants] with a misleading consent form" to install hardware in apartments because the landlords' alleged injuries were "purely contingent on harm to" the tenants deceived into signing up for the defendants' services and therefore were derivative (quoting *Smokes-Spirits*, 12 N.Y.3d at 622)).

### ii. The legislative history supports rather than undermines the Court's decision

Nor does the legislative history of sections 349 and 350 support Plaintiff's argument that

---

[12] Plaintiff also relies on the state Supreme Court's decision in *In re Opioid Litigation* to argue that the Court should find that its injuries are direct rather than derivative and therefore cognizable under sections 349 and 350.  (Pl.'s Obj. 8.)  However, in light of the controlling Court of Appeals decisions in *Blue Cross* and *Smokes-Spirits*, the Court declines to follow *In re Opioid Litigation* to the extent that it can be read as inconsistent with those two cases.  *See In re Opioid Litig.*, INDEX No. 400000/2017, 2018 N.Y. Misc. LEXIS 2428, at *72–73, *91–92 (Sup. Ct. Jun. 18, 2018) (finding that "to the extent the manufacturer defendants urge the application of the rule barring recovery of indirect or derivative injuries sustained by others," the plaintiff counties, who were mandated payors of a portion of the state's Medicaid expenses and suffered direct financial loss from the increased demand for medical care caused by the opioid epidemic, were "not simply seeking to recoup medical and drug costs incurred by their employees and Medicaid beneficiaries").

it has suffered a cognizable injury.

The legislative history of sections 349 and 350 reflects an intent to "protect the consumer against fraudulent business practices."[13]  (Bill Jacket, L. 1980, ch. 346, at 6 (Signing Statement by Governor Hugh L. Carey).)  Proponents of the legislation believed it would "give the individual consumer the right to seek judicial redress for injury incurred by reason of a violation of [s]ection 349."  (*Id.* at 10 (Letter from Joseph L. Bruno); *id.* at 11–12 (Letter from Gene DeSantis); *id.* at 13–14 (Letter from Jose E. Serrano)).

As Plaintiff argues, by creating a private right of action in sections 349 and 350, the state legislature sought to expand individual remedies against deceptive business practices that the Attorney General lacked resources to address.  (R&R 9–10 (collecting legislators' statements); Pl.'s Obj. 13–15.)  However, proponents of the legislation also considered the burdens imposed by this new private right of action, including the risk of a flood of litigation, and drafted the statutes to be interpreted with "[c]ommon sense" in mind.[14]  (*Id.* at 10 n.4 (quoting Richard A.

---

[13]  The Court cites to the bill jacket, which is not consecutively paginated or available on a major legal reporter, and uses the pagination of the copy submitted to the Court.  The Court notes that opponents of the legislation were concerned that consumer class actions would harm business interests in the state, and a class-action provision was removed from an earlier draft of the statute to mitigate that concern.  (Bill Jacket, L. 1980, ch. 346, at 10–14 (Letter from Joseph L. Bruno; Letter from Gene DeSantis; Letter from Jose E. Serrano.)  Opponents of the bill also suggested that the availability of damages and attorneys' fees to prevailing litigants would motivate individuals to pursue "previously untried theories of deception."  (*See id.* at 26 (Letter from William D. Hassett).)

[14]  Based on the consideration of the legislators, Judge Mann properly considered and determined that the likely increase in litigation weighed against recognizing Plaintiff's injuries as cognizable.  (R&R 14–15.)  In addition, contrary to Plaintiff's objections, Judge Mann did consider whether a loss of support for Plaintiff's organizational mission was an independent injury actionable under the statute, (*id.* at 13–15), and decided that injury to Plaintiff's mission was derivative of injury to consumers who had been misled by Defendants' advertising, (*id.* at 13).  Judge Mann also noted the potential increase in litigation as one factor that weighed against a finding that an advocacy organization such as Plaintiff could allege an injury based on harm to its mission.  (*Id.* at 14–15.)

Givens, Practice Commentaries, N.Y. G.B.L. § 349, at 573 (McKinney 2004)).)  Thus, the legislative history suggests a balance between allowing individual plaintiffs to seek relief while limiting the potential for mass litigation.  (*See* Bill Jacket, L. 1980, ch. 346, at 8 (Letter from Joseph L. Bruno identifying class actions as one potential burden).)

### iii.  Plaintiff's argument that it is a uniquely situated organization does not support its claim of direct injury

Plaintiff's argument that the Court should find its injury cognizable because (1) few organizations are prepared to follow in its footsteps, (Pl.'s Obj. 12), and (2) it has unusually strong evidence that Defendants' advertising affects its mission, (*id.*), are not persuasive because Plaintiff provides no reason to explain why similar organizations will not adopt similar litigation strategies in the future.  Plaintiff alleges that it has strong evidence that Defendants' advertising affects its mission.  (*Id.*)  However, that argument is similar to the unsuccessful arguments of the plaintiff in *Smokes-Spirits*.  12 N.Y.3d at 622.  In that case, every consumer's purchase of cigarettes using the defendant's website caused a financial injury to the plaintiff, but the court nevertheless found that the harm to the plaintiff was derivative because the plaintiff's injury arose out of injury to third parties — the deceived consumers.  *Id.*  Even though every injury to a consumer resulted in a loss of revenue to the plaintiff, the alleged injury was still indirect and did not give rise to a claim.  *Id.* at 622–23.  Similarly, even if consumers exposed to Defendants' allegedly misleading advertising are significantly more likely to change their views on foie gras in a way that harms Plaintiff's mission, the effect of Defendants' advertising is on the consumer, not Plaintiff, whose harm in turn derives from that of the consumer.

### iv.  Judge Mann did not rely on Plaintiff's status as a nonprofit organization

Judge Mann did not rely on Plaintiff's identity as a nonprofit advocacy organization in recommending that the Court find that Plaintiff's injury is not cognizable under sections 349 and

350.  (R&R 15–16 ("[W]hile plaintiff is right to focus on the nature of the claim asserted rather than on the status of the plaintiff, the question before this [c]ourt is not whether a non-profit, advocacy, or lobbying organization is *per se* precluded from bringing suit . . . .  Rather, the [c]ourt's conclusion that plaintiff has not asserted a cognizable injury is predicated on the precise harms to [Plaintiff] alleged in the Complaint.").)  Judge Mann did not recommend dismissing because of Plaintiff's status as a nonprofit organization but because the injury Plaintiff alleged was derivative.  While Plaintiff suggests that sections 349 and 350 were intended to provide a remedy for "an 'unrestricted class of permissible plaintiffs,'" (*id.* at 14 (quoting Joseph Thomas Moldovan, Note, *New York Creates a Private Cause of Action to Combat Consumer Fraud: Caveat Venditor*, 48 Brook. L. Rev. 509, 520 n.34, 527 n.66 (1982))), the Court of Appeals has held that sections 349 and 350 do not apply to derivative injuries, and the Court finds Plaintiff's injuries to be derivative.  *See Blue Cross*, 3 N.Y.3d at 206.  Therefore, Plaintiff's argument that any class of plaintiff can bring a section 349 or 350 claim had no bearing on Judge Mann's decision.

### v.   Plaintiff's additional arguments do not undermine this conclusion

Finally, Plaintiff argues that (1) other states' consumer protection laws and (2) principles underlying Article III standing should be a guide in interpreting sections 349 and 350.  (Pl's Obj. 8–10.)  Those sources of authority might be useful to the Court if better sources were unavailable, but binding New York Court of Appeals precedent interpreting the injury prong of sections 349 and 350 provides sufficient guidance to reach a conclusion in this case.  *See Deutsche Bank Nat'l Tr. Co.*, 810 F.3d at 865 (explaining that federal courts "determining New York state law claims . . . must apply 'the law of New York as interpreted by the New York Court of Appeals'" (quoting *Licci*, 739 F.3d at 48)).  Moreover, the legislative history, the state-

court decisions, and the decisions of other district courts interpreting sections 349 and 350 provide the context necessary for the Court to conclude that the Court of Appeals would not find that Plaintiff has suffered an injury cognizable under either statutory provision. *See Travelers Ins. Co.*, 14 F.3d at 119 (listing sources to which district courts may look, including legislative history and Appellate Division decisions, in resolving any ambiguity in Court of Appeals caselaw in a diversity action).

> **d.   Leave to amend would be futile**

The Court denies leave to amend as futile because the problems with the Complaint are substantive and cannot be cured by amendment. *See Grullon v. City of New Haven*, 720 F.3d 133, 140 (2d Cir. 2013) ("Leave to amend may properly be denied if the amendment would be 'futil[e].'" (alteration in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962))); *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 224–25 (2d Cir. 2017) ("Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012))).

Plaintiff's pleading establishes that its injury is derivative and therefore not actionable under sections 349 or 350, and amending the Complaint to add additional facts would not correct that substantive legal defect.

**III.   Conclusion**

For the foregoing reasons, the Court adopts the R&R and dismisses the action.

Dated: March 25, 2021
        Brooklyn, New York

                              SO ORDERED:


                              _____s/ MKB_____
                              MARGO K. BRODIE
                              United States District Judge